NEELY *v.* SHEPPARD.

No. 12114. MARCH 9, 1938.
ADHERED TO ON REHEARING, MARCH 26, 1938.

*Lewis & Lewis,* for plaintiff in error.
*Pierce Brothers* and *Joseph Law,* contra.

BELL, Justice. A. L. Sheppard filed a suit to enjoin A. W. Neely from prosecuting a dispossessory warrant proceeding pending in the city court of Waynesboro, in which Neely sought to evict Sheppard, as a tenant holding over, from a building in the City of Waynesboro known as the Grand Theatre building and more particularly described in the petition. The plaintiff alleged that he was not a tenant holding over, but that he was the equitable owner of the premises, in that he was in possession of the same under a contract of rental for a period of twelve months; that as a part of that contract he had been granted an option by Neely to purchase the premises at any time within twelve months after October 1, 1935, for $8000; and that he had tendered that sum to Neely before the twelve months expired, and the tender had been refused. He prayed for an injunction, and also that Neely be required to specifically perform the contract with reference to the sale of the land. The petition did not show on its face whether the alleged contract was oral or in writing. The defendant filed an answer denying the material allegations of the petition. He alleged that the plaintiff was a tenant at will, and that he had given to the plaintiff the statutory notice of sixty days before instituting the dispossessory warrant, and denied that he had granted to the plaintiff an option to purchase the property. On the trial the jury found a verdict in favor of the plaintiff. A new trial was granted by the court. Thereafter, on May 10, 1937, the defendant amended his answer by averring that the alleged option on which the plaintiff relied was not in writing, and pleading the statute of

frauds. The plaintiff then amended his petition by alleging the following facts, for the purpose of showing performance or part performance on his part: "(a) That on the 17th day of July, 1936, your petitioner tendered the said defendant the sum of $8000, the price named in his option, and demanded a deed to said property, which defendant refused to execute, thus fulfilling his part of the option contract; and it would be a fraud on the part of defendant to refuse to comply with his option. (b) That plaintiff would not have rented said property had it not contained an option to buy. He told defendant that it would be necessary to expend some $2500 in improvements for him to rent for another year, but if he, defendant, could not expend said amount, that he would re-rent the property provided he was given an option to purchase the same during the twelve-months contract, and this the defendant agreed to; and he alleges that he thus saved the defendant that sum, and it was a part of the contract of rental and option contract. (c) That not only this, but plaintiff, on the faith of his contract of rental and his option contract, obligated himself for films or pictures for a period of twelve months, as he could not operate a moving picture except by making contracts for twelve months, and this fact the defendant well knew when he rented said premises to plaintiff, and this was another reason for his having to rent for a year, which amounted to some five hundred or a thousand dollars; and this expense he would not have incurred had he not had an option to purchase the said described premises. (d) That petitioner has fully complied with his part of the option contract in every way; defendant allowed him to enter and retain possession under said contract of rental, and having complied with his option by paying rent, refraining from demanding any improvements, incurring unusual expense in the purchase of pictures, and tendering the amount that was agreed on as the sale price, and he is entitled to have defendant carry out his part of said contract." The case then proceeded to trial a second time. The verdict, as before, was in favor of the plaintiff. The defendant again moved for a new trial, which the court refused, and he excepted. The motion for a new trial contained the general grounds and several special grounds which were added by amendment.

■ After a careful examination of the record, we have reached

the conclusion that the verdict in favor of the plaintiff was contrary to the evidence and without evidence to support it, and that the judge erred in refusing to grant a new trial on the general grounds. We are reluctant to set aside a second verdict in favor of the plaintiff, as well as to disagree with the learned counsel for the defendant in error who so earnestly contend that the verdict should stand. At the time of the first verdict, however, the defendant had not pleaded the statute of frauds, and therefore the second trial involved a new and distinct issue which apparently was not considered on the first trial. *Bridges* v. *Williams,* 148 *Ga.* 276 (96 S. E. 499). Furthermore, any number of verdicts in favor of the plaintiff could have no sacredness where the law and the evidence are clearly against a recovery. *Chambers* v. *Collier,* 4 *Ga.* 193; *Trustees of Monroe Female University* v. *Broadfield,* 30 *Ga.* 1 (3); *McDade* v. *Georgia Railroad Co.,* 60 *Ga.* 119; *Mitchell* v. *Malone,* 77 *Ga.* 301; *Fremont Cultivator Co.* v. *McCamy,* 80 *Ga.* 343 (4 S. E. 849). It appears without dispute that the plaintiff acquired possession of this property as a tenant of the defendant, in June, 1930. He contends that while remaining in such possession he had an agreement with the defendant in July or August, 1935, whereby the rental contract was renewed for a period of twelve months beginning October 1, 1935, and that as a part of this agreement he was granted an option to purchase the property for $8000 at any time within the twelve-months period. The rent agreed on was $50 per month, but there was no agreement that the rent as paid should be applied on the purchase-money in case of an election to exercise the option. The defendant contended that the plaintiff was and had been for several years a tenant by the month or at will, and that there was no agreement to rent the property for twelve months from October 1, 1935, as claimed by the plaintiff. The defendant further contended that in September, 1935, the plaintiff asked for improvements which the defendant declined to make. He admitted that he stated to the defendant on that occasion that he would sell the property for $8000, but he testified that he granted no option, and that this offer was not made in connection with any agreement to rent the property. In November, 1935, the defendant agreed to sell the property to a different person for $8000, and a little later a deed executed by him, and the amount to be paid by such purchaser,

were placed in escrow, subject to delivery of possession by the defendant. In December the defendant gave to the plaintiff a written notice that the tenancy would be terminated on March 1, 1936, and on refusal of the plaintiff to vacate the premises on that date the defendant sued out a dispossessory warrant returnable to the city court of Waynesboro. A counter-affidavit was filed March 3, 1936, and the present suit was instituted May 2, 1936. On learning that the defendant had sold the property to a third person, the plaintiff protested, and gave notice that he would rely upon his option. He tendered to the defendant $8000 as payment of the purchase-price, on July 17, 1936, within the twelve months alleged to have been covered by the option.

In reviewing the case on the general grounds, all conflicts in the testimony should of course be resolved in favor of the plaintiff. Let us say then that in July or August, 1935, the defendant did agree to rent the property to the plaintiff for the period of twelve months beginning October 1, 1935, and as a part of this agreement gave to the plaintiff an option to purchase the property at the sum named at any time within such period. The agreement, however, was oral, and was thus within the statute of frauds, unless there were other facts to render the statute inoperative. While an option to purchase land may not pass any interest in the land before the exercise of the option (*Franklin* v. *McCormick,* 182 *Ga.* 757, 187 S. E. 6), the statute applies to "any contract for sale of lands, or any interest in or concerning them." Code, § 20-401, par 4. It has been held that "an agreement resting wholly in parol, whereby one promises to sell to another an interest in land upon tender within a given time of a specified amount, is within the statute of frauds." *Lyons* v. *Bass,* 108 *Ga.* 573 (34 S. E. 721). In relying upon this option, the plaintiff is certainly in no better position than if he were standing upon an unconditional oral agreement to sell and purchase. Since it appears without dispute that the option was not in writing, the real question for decision is whether there is any evidence to establish an exception to the statute of frauds. The statute (§ 20-402) does not extend to the following cases: "1. When the contract has been fully executed. 2. Where there has been performance on one side, accepted by the other in accordance with the contract. 3. Where there has been such part performance of the contract as would render it a fraud

of the party refusing to comply, if the court did not compel a performance." Under this law, it has been held that specific performance of an executory parol contract for the sale of land will be decreed in only two instances. "One is where the defendant admits the contract. The other is where it is so far executed by the party seeking relief that if the contract be abandoned he can not be restored to his former position. Full payment alone, accepted by the vendor, or partial payment accompanied with possession, or possession alone with valuable improvements, if clearly proved in each case to be done with reference to the parol contract, will be sufficient part performance to justify a decree. The plaintiff is seeking affirmative equitable relief, namely, specific performance of a parol contract for the sale of land. It is incumbent upon him to bring his case within the statute." *Grant* v. *Derrick*, 134 *Ga.* 644 (2) (68 S. E. 422). Also, where the law requires a contract to be in writing, a court of equity will enforce an agreement made otherwise only where "the parties have so acted upon and by virtue of the contract as that it would be a fraud to permit the defendant to repudiate it." *Haisten* v. *Savannah, Griffin & North Ala. R. Co.*, 51 *Ga.* 199; *Nowell* v. *Monroe*, 177 *Ga.* 648, 652 (171 S. E. 136).

The plaintiff relies upon several things which he contends should remove the case from the domain of the statute. They will now be examined in order.

First. He alleges and proves that within the twelve-months period he tendered to the defendant $8000, "the price named in his option," and demanded a deed to the property, which the defendant refused. These facts alone did not create an exception to the statute. The plaintiff still has his money, and is not prejudiced. *Printup* v. *Mitchell*, 17 *Ga.* 558 (10, 11) (63 Am. D. 358); *Lumpkin* v. *Johnson*, 27 *Ga.* 485; *Graham* v. *Theis*, 47 *Ga.* 479; *Gillis* v. *Wade*, 131 *Ga.* 444 (62 S. E. 524); *Gaskins* v. *Moore*, 50 *Ga. App.* 529 (179 S. E. 422).

Second. The plaintiff would not have entered into the contract of rental if it had not contained an option to purchase. This fact alone does not help the plaintiff in the slightest degree. It is no answer to the statute of frauds to say that he would not have entered into an oral contract as to one matter if it had not contained an oral promise with respect to another matter. One can not lift

himself by his own bootstraps. Where an oral contract embraces two agreements in reference to different subject-matters, one being subject to the statute of frauds, neither agreement is aided by the other, so far as the statute is concerned. This is true for the reason that both agreements are subject to the same infirmity as related to such statute. While the rental agreement for not more than one year was valid (*Steininger* v. *Williams*, 63 *Ga.* 475; *Render* v. *Harris*, 25 *Ga. App.* 302, 103 S. E. 179), and furnished a consideration for the option, it did not supply the necessity of a writing or render the option valid under the statute of frauds. It was not more than the equivalent of a consideration paid in cash for an option given by word of mouth, and did not constitute such part performance as would make the option binding. Even in an oral contract of purchase and sale, part payment of the purchase-money, without more, will not entitle the purchaser to specific performance. *Wimberly* v. *Bryan*, 55 *Ga.* 198; *Corbin* v. *Durden*, 126 *Ga.* 429 (55 S. E. 30); *Gillis* v. *Wade*, 131 *Ga.* 444 (supra); *Hill* v. *Jones*, 7 *Ga. App.* 394 (3) (66 S. E. 1099). But it is declared by the Code that "partial payment accompanied with possession, . . if clearly proved . . to be done with reference to the parol contract, shall be sufficient part performance to justify a decree." § 37-802. There was no payment for the option, or other payment, *accompanied by possession,* within the meaning of this section. The plaintiff did not go into possession either under the contract of rental or the option agreement. He was already in possession as a tenant of the defendant, and had been since June, 1930. His possession merely continued, and there was no change in his status. So far as possession was concerned, he performed no act in reliance upon the agreement. In *Lumpkin* v. *Johnson*, 27 *Ga.* 485, 489, it was said: "There was not the thing of part performance. Lumpkin [the party seeking specific performance] did nothing whatever, in performance of the agreement. He *offered* to pay the money, at the proper time, but that was not paying it. He was in possession of the land, it is true, but his being so was under the previous contract, or indeed contracts—not under this contract. It does not appear that he laid out any labor or money on the land, *after* the making of this, the last contract."

In *Harper* v. *Gorley*, 128 *Ga.* 444, 446 (57 S. E. 695), this

court said: "The agreement being merely verbal, it is not enforceable, for the want of a writing, unless there are facts alleged which would amount to such a part performance as would make it a fraud to allow the party against whom the relief is prayed to defeat the opposite party by pleading the want of a writing. Mrs. Gorley was in possession. It is true that she was a tenant in common, but nevertheless she was in possession. There was no change in the status resulting from the agreement. The status was the same after the agreement as it was before. The defendant parted with nothing that he had prior to the agreement, and was paid nothing. The facts are not sufficient to make out a case of part performance." In *Walker* v. *Malsby Co.*, 134 *Ga.* 399 (2) (67 S. E. 1039), the agreement under consideration related to personalty, but the statute of frauds was involved, and in reference thereto it was said: "The circumstances relied upon by the defendants to show delivery and acceptance are insufficient for that purpose. Where possession is retained by the vendor, something more than the parol agreement of sale relating to the transfer of the title and the possession is necessary to constitute constructive delivery. The statute requires something more than mere words; it calls for acts, to dispense with a writing. It must appear that after the parol contract was made, some act was done within the intention of the parties indicating an assertion of dominion over the goods by the vendee. It is no objection that such act be done by the vendor as the agent of the vendee. The vendee may constitute his vendor his bailee to accept the goods, but such bailee must do some act on the faith of the parol contract which characterizes his possession as that of agent or bailee of the vendee, or the vendee must do some act in recognition of the change in the character of the possession." The evidence shows without dispute that the plaintiff had been paying as rent the sum of $50 per month for some time before the date of the alleged option, and that he had even increased the rent voluntarily to this sum from a lower figure which had obtained for a while when the times were more stringent. He made no contention that the property was not worth the full sum of $50 per month as rent, or that any sum paid was to be applied as part payment of the purchase-money. From what has been said, there was no such part payment *accompanied by possession* as would authorize a decree of specific performance; and in

stating this conclusion we do not mean even to intimate that the facts would justify such a decree if the plaintiff had been out of possession and had taken possession as a tenant under the parol agreement. See, in this connection, *Kinderland* v. *Kirk,* 131 *Ga.* 454 (2) (62 S. E. 582); Burns v. McCormick, 233 N. Y. 230 (135 N. E. 273); Walter v. Hoffman, 267 N. Y. 365 (196 N. E. 291, 101 A. L. R. 919).

Third. It is contended that in view of the contract the defendant as landlord was relieved of the necessity of expending $2500 for needed improvements. After referring to improvements needed, the plaintiff testified as follows: "I explained all these things to Mr. Neely, and told him that though things had been improving I could not operate the place under those conditions another year, and that the place must be fixed up. We had several conversations about it; and as he had other pressing matters, he put me off, and finally said that we might later work out some way of remodeling it. Everything was so vague that I later asked him that if he could not make these improvements, would he sell the property. He said that he would, and first offered it to me for $10,000. We discussed the matter, and he finally said $8000. I said, 'If you will sell it for $8000 and give me the time to raise the money I will keep it and pay you the same rent I paid last year, $50 a month, or until such time as I can raise the money. I will go to work on it and try to raise it as quickly as I can and keep you posted on it.' . . Yes, there was a new contract made in 1935, but no more than a verbal one. I don't know the exact month it was made, but it was either in July or August. I won't say which. I can't tell you which it was, because he asked me for an increase, and we had various discussions. He didn't make an increase, because I told him I couldn't pay any more unless the building was remodeled, and I couldn't even continue to operate the place if it was not remodeled. He did not remodel it. I mean both repairs and remodeling, because the building has been leaking for years. In the colored hallway in the back there was a leak. No, he hasn't repaired every leak I told him about. He sent something up there to put on the roof, but it is still there. I notified him about the leaks a number of times. I have paid Mr. Neely no money at all on the building. He wouldn't accept it. I have made no improvements on the property, no more than

paint and such as that. I have done no more than I have done in previous years. Yes, conditions were just as good or gradually better in 1935-1936 than they were in 1934 and 1935. They had been gradually improving since 1933, and were much better than they were in 1930. I paid no more rent in 1936 from August, 1935, than I had the previous year, because I had an agreement not to, because I was going to buy the building." In another part of the evidence it appears that the improvements desired by the tenant would have cost about $2500. So far as shown, there were no latent defects. In the absence of an agreement to do so, a landlord is not bound to repair patent defects of which the tenant had notice at the time of entering the rental contract. *Aikin* v. *Perry,* 119 *Ga.* 263 (3) (46 S. E. 93). Accordingly, in this case, the defendant as landlord was not relieved of any duty which he owed to the plaintiff as tenant with reference to repairs or improvements. *Cox* v. *Walter M. Lowney Co.,* 35 *Ga. App.* 51 (132 S. E. 257); *Cooper* v. *Meaders,* 47 *Ga. App.* 89 (2-a) (169 S. E. 685). The defendant declined to make the improvements, and it does not appear that he would have done so under any circumstances pertinent to this case. Mere non-action on the part of either the plaintiff or the defendant would not take the contract out of the statute of frauds. Manifestly, the fact that the defendant did not agree to make improvements would not add force to the parol option which he may have granted instead, but which was not otherwise enforceable under the statute of frauds. These facts did not to any extent constitute a part performance on the part of the plaintiff. *Augusta Southern Railroad Co.* v. *Smith & Kilby Co.,* 106 *Ga.* 864 (2) (33 S. E. 28); *Hawkins* v. *Studdard,* 132 *Ga.* 265 (7) (63 S. E. 852, 131 Am. St. R. 190); *Schadmann* v. *Durrence,* 37 *Ga. App.* 640 (141 S. E. 331).

Fourth. On faith of the agreement with the defendant, the plaintiff entered into contracts with others for moving pictures for the year beginning October 1, 1935. The fact that the plaintiff made contracts with others did not amount to any part performance of the contract between him and the defendant. In *Graham* v. *Theis,* 47 *Ga.* 479 (2), 483, it was said: "The authorities establish that the part performance which entitles a contractor for the sale of lands by parol, to relief, must be a part performance of the terms of the contract. The doing of an independent thing,

even though the act would not have been done but for the contract, is not sufficient: Revised Code, sections 1940, 3130; Fry on Specific Per. 174; Kerr on Fraud, 135. The basis of the whole doctrine of specific performance, by a court of equity, of parol contracts for the sale of land, is fraud. The court will interfere to prevent fraud, but the rule of part performance is confined to part performance of the contract. Indeed, the very word performance implies this. Any other rule would place the case altogether in the hands of one party." See, to the same effect, *Giradot* v. *Giradot,* 172 *Ga.* 230 (157 S. E. 282) ; *Lane* v. *Lodge,* 139 *Ga.* 93 (2) (76 S. E. 874).

Fifth. The plaintiff paid the rent as agreed at $50 per month. Reference to this fact has been made in the preceding discussion. Even if the payments of rent could be considered as having been induced by the option agreement, they could not have any greater force toward creating an exception to the statute of frauds than a partial payment of the purchase-money, which, as we have seen, would not, without more, justify a decree in the plaintiff's favor; and since there was no change of possession, the case does not come within the principle as to part payment of the purchase-money accompanied by possession. The facts do not show that the plaintiff has been harmed, or that it would be a fraud upon him for the defendant to repudiate the alleged oral agreement. In *Printup* v. *Mitchell,* supra, it was held, in effect, that specific performance will not be decreed in favor of a vendor who has "had no prejudice" or has "done nothing to entitle him to say the non-execution was a fraud upon him." See also the reference in that decision to the matter of possession, 17 *Ga.* 565. In *Brunswick Grocery Co.* v. *Lamar,* 116 *Ga.* 1, 6 (42 S. E. 366), this court quoted with approval the following statement: "It is obvious that the *mere* circumstance that a verbal agreement has been in part performed can afford no reason, such as to control the action of any court, whether of law or equity, for holding the parties bound to perform what remains executory. The doctrine of equity in such cases is that where an agreement has been so far executed by one party, with the tacit encouragement of the other, relying upon his fulfilment of it, that for the latter to repudiate and shelter himself under the provision of the statute would amount to a fraud upon the former, that fraud will be defeated by compelling him to carry out the agreement."

So, it is our opinion that the verdict was contrary to the evidence and without evidence to support it, so far as it related to specific performance. This conclusion is deemed not to be in conflict with any of the decisions cited for the defendant in error. *Walker* v. *Edmundson,* 111 *Ga.* 454 (36 S. E. 800), was decided by this court upon the assumption that the agreement was in writing. In *Crawford* v. *Smith,* 151 *Ga.* 18 (105 S. E. 477), a written agreement affirmatively appeared. The case of *Richards* v. *Plaza Hotel Inc.,* 171 *Ga.* 827 (156 S. E. 809), involved only a contract of *rental;* and while the alleged term was more than one year and the contract was not in writing, the tenant's petition for specific performance showed that she *entered* into possession and paid rent in reliance upon the contract, and it was held that the petition showed such part performance as to render the contract enforceable. It is our opinion that none of these cases, nor others cited, would sustain the verdict in this case.

■ The verdict was in the form of answers to questions propounded to the jury by the judge. He construed the answers as authorizing a decree of specific performance and a judgment permanently enjoining the eviction proceeding. It follows from what has been said in the preceding division, that, although the plaintiff may have had a valid contract of rental for a period of twelve months from October 1, 1935, and the dispossessory warrant may have been thus premature and wrongful, the plaintiff had no equitable interest in the property and had an adequate remedy at law by the counter-affidavit which he filed. Code, §§ 55-103, 61-303; *Bobatoles* v. *Hill,* 180 *Ga.* 739 (180 S. E. 491). The verdict in favor of the plaintiff was unauthorized under any theory, and the court erred in refusing to grant a new trial on the general grounds of the motion. The rulings stated above being controlling, it is unnecessary to pass upon the special grounds.

*Judgment reversed. All the Justices concur, except Russell, C. J., who dissents.*

ON REHEARING.

BELL, Justice: We have carefully considered every ground of the motion for a rehearing and the authorities cited. We have concluded that the motion should be denied, and feel that the original opinion sufficiently deals with the various questions argued, with two or three exceptions.

1. Is an option to purchase real estate such a contract as the statute of frauds requires to be in writing? The English statute of frauds applied to any contract for the sale of lands, "or any interest in or concerning them." 25 R. C. L. 531, § 116. The portion of this statute which has been adopted in Georgia contains the identical language quoted. Code, § 20-401 (4). In 27 C. J. 193, § 130, it is stated that in some States, however, the words "or any interest in or concerning them" have been omitted, and that "as a consequence many verbal agreements concerning real estate or creating an interest therein which would come within the terms of the English statute can be enforced in such States." The cases cited for this statement have been examined, and appear to support it. While, as recognized in the original opinion in this case, a contract granting to another an option to purchase land does not convey an interest in the land, it is nevertheless a contract "concerning land." We fully appreciate the difference between an option and a contract for the sale and purchase of land (*Black* v. *Maddox,* 104 *Ga.* 157, 30 S. E. 723), but the difference is not such as to remove the option agreement from the operation of the statute of frauds. While the facts in *Lyons* v. *Bass,* 108 *Ga.* 573, cited in the original opinion, may disclose an oral contract of purchase and sale as distinguished from an option, it appears from the decision that the agreement was construed to be one of the latter class, the ruling as stated in the headnote being as follows: "An agreement resting wholly in parol, whereby one promises to sell to another an interest in land upon tender within a given time of a specified amount, is within the statute of frauds." This language would seem to define an option, and to indicate an opinion by this court that such a contract relating to land falls under the statute of frauds. The decision was so construed and followed by the Court of Appeals in *Robinson* v. *Odom,* 35 *Ga. App.* 262 (4) (133 S. E. 53). In 27 C. J. 217, § 196, it is said: "Options. A contract by which the owner of property agrees with another person that the latter shall have a right to buy or lease the property at a fixed price within a certain time is a contract for the sale of real estate within the meaning of the statute of frauds, and must be in writing." This statement was based on the ruling in Granger Real Estate Exch. v. Anderson (Tex. Civ. App.), 145 S. W. 262. There are several other decisions to the

same effect by various courts. Haskell *v.* Merrill (Tex. Civ. App.), 242 S. W. 331; East *v.* Garcia (Tex. Civ. App.), 295 S. W. 239; Watkins *v.* Arnold (Tex. Civ. App.), 60 S. W. (2d) 476; Lowther *v.* Scheirich, 195 Ky. 177 (241 S. W. 834); Barchus *v.* Johnson, 151 La. 985 (92 So. 566); Cerrato *v.* Megaro, 96 N. J. Eq. 722 (126 Atl. 531); Hilker *v.* Curdes, 77 Ind. App. 466 (133 N. E. 851). Movant cites the case of Hughes *v.* Antill, 23 Pa. Super. Ct. 290, as supporting his contention that an option is not within the statute of frauds. There is another decision which by its language sustains the view that since an option does not grant an interest in the realty, it is not affected by such statute: Richenbach *v.* Ruby, 127 Or. 612 (271 Pac. 600, 61 A. L. R. 1441). We have examined the statutes of Pennsylvania and Oregon, however, and find that neither of them contains the expression "concerning them," that is concerning lands, or other language of similar import. The same we also find to be true of the statutes of Texas, Kentucky, Louisiana, New Jersey, and Indiana, these being the states represented by the several decisions cited together, supra. But the fact that the laws of these States omitted the words "concerning them" can only add force to such decisions on the question under consideration, since even without such language it is held that an option to buy real estate is a contract required by the statute to be in writing. If there are other decisions upon the question, we have not discovered them, nor have they been brought to our attention. It thus appears that regardless of the ruling made by this court in Lyons *v.* Bass, supra, the authorities generally hold that such an option is a contract required by the statute of frauds to be in writing. Even without precedent, it would seem to be clear that a contract granting to another an option to buy land is an agreement concerning land, and therefore within the statute.

It is contended that we improperly analogized an option and a contract of purchase and sale. We intended to do so only to the extent of holding that both are within the statute of frauds, and that the plaintiff is in no better position than if he were relying upon an oral contract of the latter class. Although a contract of tenancy may, like an option, "concern" lands without conveying an interest therein, where the term of the tenancy is less than five years (Code, § 61-101), agreements of that nature are governed

by different statutes based upon, though modifying, a different portion of the statute of frauds. Code, § 61-102; *Cody* v. *Quarterman,* 12 *Ga.* 386, 398; *Atwood* v. *Norton,* 31 *Ga.* 507; *Steininger* v. *Williams,* 63 *Ga.* 475; *Baxley Hardware Co.* v. *Morris,* 165 *Ga.* 359 (140 S. E. 869); 25 R. C. L. 530, § 116; 27 C. J. 210, § 179.

2. The movant contends that although he was already in possession as a tenant at the time he made the agreement to rent the property for another year, beginning October 1, 1935, and he did not make a new entry under the latter contract, the fact that he *remained* in possession for several months in the new term was sufficient with the other circumstances to render the option feature of the new agreement enforceable in equity, despite the statute of frauds. Discussing here only the question of remaining in possession as distinguished from entering, we will advert to a few of the decisions relied on by the movant in this connection. It would too greatly prolong this opinion to discuss each of the cases cited. We must therefore content ourselves with referring only to those which would seem to be most nearly in point. In *Steininger* v. *Williams,* 63 *Ga.* 475, which involved only a contract of tenancy, the court, after holding that an oral contract of such a nature for not more than one year is valid under the Code, though made before the year begins, went on to say: "Besides, Steininger was in possession under the contract two months, and paid rent thereon, according to plaintiff's evidence, and therefore the contract was executed. . . It was part performance, and to break it would operate to the injury of plaintiff, depriving her of opportunity to rent." Accordingly, the decision seems to hold that even if the contract was within the statute of frauds, the facts that the tenant remained in possession under the contract for two months and paid the rent thereon would be sufficient to avoid the statute. But to avoid it in favor of whom? The tenant there was seeking to invalidate the agreement, and it was said that for him to break it would operate to the injury of the landlord, depriving her of opportunity to rent. Furthermore, even if that decision should be construed as holding anything contrary to the views we have expressed in the instant case, it is also in conflict with the earlier unanimous decisions in *Printup* v. *Mitchell,* 17 *Ga.* 558, and *Graham* v. *Theis,* 47 *Ga.* 479 (2), 483, in each of which it was held in effect that the party relying upon the agreement must show

that he has performed some *act* upon the faith of it, with the result that he will be prejudiced if the agreement is not performed. In the *Printup* case it was said that "chancery will sometimes grant relief, especially where possession has been given and *retained* by the vendee." The court also quoted from Buckmaster *v.* Harrop, 7 Ves. 341 (Eng., 1802), as follows: "The vendor had no prejudice. He had done nothing to entitle him to say the non-execution was a fraud upon him. Had he *let* Barlow *into possession,* that would be an act by which he might have had a prejudice." (Italics ours.) The older unanimous decisions must be given precedence, in case of conflict. Code, § 6-1611. In the recent case of *First Joint Stock Land Bank of Montgomery* v. *Sasser,* 185 *Ga.* 417 (195 S. E. 143), the statute of frauds was not involved, no question in reference thereto having been raised. Compare *Bridges* v. *Williams,* 148 *Ga.* 276 (supra). We do not construe the decision in *Ledbetter* v. *Goodroe,* 177 *Ga.* 616 (170 S. E. 866), as holding anything contrary to the older decisions which are deemed to be controlling in the instant case. Nor was this statute involved in *Roland* v. *Floyd,* 53 *Ga. App.* 282 (185 S. E. 580), the question dealt with in that case being whether an oral contract of tenancy for the period of not more than one year, to begin in the future, was valid. The Court of Appeals held, of course, that the agreement was valid, regardless of any question of part performance on the part of the tenant. Even if the decision in *Williams* v. *Garrison,* 21 *Ga. App.* 44 (2) (93 S. E. 510), should be construed as supporting the movant's contention, it is not controlling as authority. Code, § 2-3009. Movant also refers to Eaton *v.* Whitaker, 18 Conn. 222 (44 Am. D. 586). The decision in that case showed that "there was both the delivery of possession and a continued occupancy" under the contract.

But it is insisted that the movant was led to *remain* in possession by reason of the option agreement. The movant testified that he told his landlord that he "could not operate the place" another year unless certain improvements were made, and that the landlord, instead of promising the improvements, granted him the option. The fact that the defendant remained in possession under these circumstances was not the equivalent of entering into possession. It amounted only to non-action. It has been held by this court that "mere non-action is not performance, either partial or

complete, and will not, therefore, take a parol contract out of the statute of frauds." *Augusta Southern Railroad Co.* v. *Smith & Kilby Co.,* 106 *Ga.* 864 (2) (supra); *Hawkins* v. *Studdard,* 132 *Ga.* 265 (7) (supra). See also *Simonton* v. *Liverpool, London & Globe Ins. Co.,* 51 *Ga.* 76.

3. The movant also insists that he made improvements. He testified: "I have made no improvements on the property, no more than paint and such as that. I have done no more than I have done in previous years"; also, "I made no improvements on the property as all I had was an option contract to buy and could not improve somebody else's property when I only had an option." In *Farr* v. *West,* 152 *Ga.* 595 (110 S. E. 724), it was held that "valuable improvements," as related to specific performance, "mean improvements of such character as add permanent value to the freehold, and such as would not likely be made by one not claiming the right to the possession and enjoyment of the freehold estate. Improvements of a temporary and unsubstantial character will not amount to such part performance as, when accompanied by possession alone, will take the contract out of the operation of the statute of frauds." In *Marshall* v. *Hicks,* 159 *Ga.* 871 (2) (127 S. E. 273), it was held: "The erection of improvements on the rented premises by the tenant will not amount to such part performance where such improvements were not made in pursuance of the rental agreement that the tenant should make them. The erection of such improvements by the tenant as an independent act, not a part of the contract, does not become a part performance thereof, merely because the doer of the act was led so to act by his belief or understanding that the parol contract would be performed by the other party." See also *Vickers* v. *Robinson,* 157 *Ga.* 731 (6) (122 S. E. 405); *Swan Oil Co.* v. *Linder,* 123 *Ga.* 550 (51 S. E. 622). Under these authorities the defendant has no valid claim of part performance based on improvements. All that the defendant ever did *as acts* toward the performance of the contract was to pay the rent as before, and tender the purchase-money after the dispossessory warrant was issued and the present suit filed. We can not escape the conclusion that the facts were insufficient to render the statute of frauds inapplicable, and that the verdict was unauthorized.

In the original opinion it was stated that "we do not mean even

to intimate that the facts would justify such a decree if the plaintiff had been out of possession and had taken possession as a tenant under the parol agreement." That question is, of course, not involved in the instant case; but as a further precaution against the possibility of implications thereon, the writer, speaking for himself alone, wishes to interpolate the following interrogations: Since a mere option conveys no interest in the land, and contemplates no entry or right of entry, if there had been an *entry* in this case in pursuance of the oral agreement of the dual nature indicated, should it not as a matter of law be considered as an entry made solely under the portion of the agreement relating to tenancy? Could it be said that such an entry was in performance of anything to be done under the option agreement?

*Judgment adhered to. All the Justices concur, except Russell, C. J., who dissents.*